

**FILED**

Oct 08 2024

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY    s/ GloriaVocal    DEPUTY

1  **Plaintiff**: Daniel Ndizeye
**Address**: 711 51st St, San Diego, CA 92114-1001, USA
2  **Phone NO**: (619) 394-2453
**Email**: danielndizeye100@gmail.com
3

4  **UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA**

5  **'24CV1768 JES KSC**

6  Daniel Ndizeye
**Plaintiff.**
7

**COMPLAINT FOR NEGLIGENCE IN MAINTAINING PUBLIC INFRASTRUCTURE AND PROLONGED DANGEROUS CONDITIONS**

8  DEMAND FOR JURY TRIAL

9  (1) Violation Equal Protection Clause (14th Amendment)
10

11  v.

(2) Violation Title VI of the Civil Rights Act of 1964
Under: 42 U.S.C. § 2000d

12  (3) Americans with Disabilities Act (ADA) - Title II
Under: 28 CFR § 35.151
13

14  (4) Failure to Comply with (FHWA) Guidelines and MUTCD Standards
Under: 23 CFR § 655.603, 23 CFR Part 625
15

16  City of San Diego
**Defendant.**
Case No.
17

(5) Violation of California Government Code § 835 and 835.2: (Liability of Public Entities for Dangerous Conditions)

Complaint filed:
18

19  **I. INTRODUCTION**

20  1.  Plaintiff, Daniel Ndizeye, a resident of 711 51st Street, San Diego, California, respectfully brings

21  this Complaint against the City of San Diego (hereinafter "Defendant") to address the City's ongoing failure to

22  maintain safe, accessible, and non-discriminatory public infrastructure for over 59 years as required by federal law.

23  This action is instituted under **(1)** *Equal Protection Clause (14th Amendment)*, **(2)** *Title II of the Americans with*

24  *Disabilities Act (ADA)*, **(3)** *Title VI of the Civil Rights Act of 1964*, **(4)** *Section 504 of the Rehabilitation Act of 1973*,

25  and **(5)** relevant Federal Highway Administration (FHWA) Guidelines and Standards.

26  2.  The Plaintiff has been directly and adversely affected by the City's neglect, which has rendered the

27  roadways and sidewalks in his neighborhood unsafe and inaccessible, particularly for individuals with disabilities.

28  COMPLAINT FOR NEGLIGENCE IN MAINTAINING PUBLIC INFRASTRUCTURE AND PROLONGED
DANGEROUS CONDITIONS - 1

1   The City's failure to act has also perpetuated systemic discrimination against residents of minority backgrounds, in

2   violation of federally mandated protections.

3       **3.**      Plaintiff seeks declaratory and injunctive relief to compel the City to fulfill its legal obligations by

4   undertaking the necessary repairs and improvements to the infrastructure on 711 51st Street. The relief sought is

5   focused solely on ensuring compliance with federal laws and protecting the Plaintiff's rights to safe and accessible

6   public facilities.

7       **4.**      **Defendant's Failure to Uphold Relevant Federal Statutes:**

8       a)   **Americans with Disabilities Act (ADA) - Title II:** Pursuant to *28 CFR § 35.151*, public entities

9            are required to ensure that all public services, programs, and facilities are accessible to individuals

10           with disabilities. The City of San Diego's failure to maintain accessible sidewalks and curb ramps

11           constitutes a clear violation of this mandate.

12      b)   **Rehabilitation Act of 1973 Section 504:** *29 U.S.C. § 794* prohibits discrimination in any program

13           or activity receiving federal financial assistance, requiring that public infrastructure remain

14           accessible and free from hazardous conditions. The City's failure to maintain proper infrastructure

15           has created significant obstacles and hazards that directly impact Plaintiff.

16      c)   **Title VI of the Civil Rights Act of 1964:** Under *42 U.S.C. § 2000d*, any program or activity

17           receiving federal financial assistance is prohibited from engaging in discrimination based on race,

18           color, or national origin. The City's neglect of infrastructure in predominantly minority

19           neighborhoods constitutes a violation of this statute.

20      d)   **Federal Highway Administration (FHWA) Guidelines and MUTCD Standards:** The City is

21           obligated under *23 CFR § 655.603* and *23 CFR Part 625* to comply with the Manual on Uniform

22           Traffic Control Devices (MUTCD) and adhere to federally established design standards for urban

23           streets. The City's failure to ensure pedestrian safety and accessibility as per these standards

24           further supports the Plaintiff's claims.

25      e)   **Environmental Justice (Executive Order 12898):** The City of San Diego's neglect of

26           infrastructure in Plaintiff's neighborhood directly violates the principles of Environmental Justice

27           as set forth by *Executive Order 12898*, which seeks to eliminate environmental harm in minority

28   _____
COMPLAINT FOR NEGLIGENCE IN MAINTAINING PUBLIC INFRASTRUCTURE AND PROLONGED
DANGEROUS CONDITIONS - **2**

and low-income communities. By failing to maintain safe and adequate infrastructure, the City has subjected Plaintiff to disproportionately adverse environmental effects, creating unsafe and hazardous living conditions. This neglect constitutes an environmental injustice and further supports Plaintiff's claims under Title VI of the Civil Rights Act.

5.    **Defendant's Violation Relevant California Laws and Regulations:**

   a)   **California Government Code § 835 & § 835.2:** These sections establish the liability of public entities, like the City of San Diego, for injuries caused by dangerous conditions on their property, including public roads and sidewalks.

   b)   **California Public Resources Code § 26650:** This code mandates that districts have the responsibility and capability to fund and ensure the upkeep of public infrastructure, which directly relates to the maintenance of public roads and safety measures.

   c)   **California Building Code (CBC) § 11B-403.5:** The clear width of walking surfaces should be 3ft minimum, ensuring enough space for most individuals, including those using wheelchairs, to navigate comfortably.

   d)   **California Fire Code § 503.2.1:** This code mandates a minimum width of 20 feet, while also maintaining an unimpeded vertical clearance of 13 ft 6 in for fire apparatus access roads. The presence of parked vehicles and bidirectional traffic on 711 51st St effectively reduces the width to 14.2 ft. As a result, fire trucks and emergency ambulances are unable to access the road.

   e)   **California's Public Resources Code § 6265:** Mandating Road maintenance, the City's lack of action is a violation of these regulations.

   f)   **California Civil Code § 3480:** Recognizes the concept of "public nuisance," which affects an entire community or a considerable number of persons, encompassing issues that can arise from the neglect of public spaces like roads. This law acknowledges the broader community-wide impact of such conditions.

   g)   **Title 19 CCR, Article 3, § 3.05:** Requires that "Access roads from every building to a public street shall be all-weather hard- surfaced (suitable for use by fire apparatus) right-of-way not less than 20 feet in width.

h) **Defendant's Breach of San Diego Municipal Code:**

a. **San Diego Municipal Code (§ 82.01):** The City is authorized to install and maintain traffic control devices to manage and ensure clear sightlines at intersections, including 'no parking' zones to enhance visibility for all drivers.

b. **San Diego Municipal Code § 72.135(a):** Grants the Road Commissioner authority to place red curbs for safety, which the City failed to implement in a timely manner.

c. **Cal MUTCD § 2C.29 Option 04a, Speed humps Sign (W17-1):** This directly addresses the issue of excessive speeds by indicating that physical measures, like speed humps, and speed signs are recognized and necessary traffic calming solutions that need to be clearly marked for driver awareness.

d. **San Diego Municipal Code § 82.02:** That traffic laws requiring signs, like speed limits, can only be enforced if those signs are clearly posted and visible, ensuring drivers are aware of and comply with the regulations.

e. **Public Road Standards, County of San Diego Department of Public Works, § 4.5E, line 1, Non-Mobility Element Roads:** The right-of-way for the subject road is mandated to be 52 feet in width. However, the current road configuration fails to comply with this requirement. The roadway itself measures only 20 feet across and is further reduced to an effective width of 14.2 feet due to the presence of parked vehicles. Additionally, there is a sidewalk of merely 5 feet on one side, which is obstructed by utility poles. This configuration falls significantly short of the required 52 feet of clear, unobstructed right-of-way, which is intended to encompass the roadway, sidewalks, and utility zones to ensure safe and accessible passage for all users.

f. **Public Road Standards, County of San Diego Department of Public Works, § 4.5E, line 2, Non-Mobility Element Roads:** The regulation stating that "the pavement width between the curb faces shall be 32 feet" requires that the roadway surface available for vehicular traffic, measured from one curb face to the opposite curb face, must be 32 feet wide in residential neighborhood roads. This prescribed width is designed to ensure

adequate space for accommodating two-way traffic and potentially on-street parking. A roadway that fails to meet this 32-foot width requirement does not conform to the established standards, thereby compromising the safe and efficient flow of traffic.

g. **Public Road Standards, County of San Diego Department of Public Works, § 4.5E, line 3, Non-Mobility Element Roads:** The regulation specifies that the minimum radius of a cul-de-sac must be 38 feet to the curb within a 48-foot radius of the right-of-way. This measurement refers to the distance from the center of the cul-de-sac to the beginning of the curb edge. A minimum radius of 38 feet is essential to ensure there is sufficient space for vehicles, particularly larger ones such as emergency and service vehicles, to maneuver and turn around safely at the end of the road.

h. **Public Road Standards, County of San Diego Department of Public Works, § 4.5E, line 5, Non-Mobility Element Roads:** The regulation stipulates that residential cul-de-sac roads should not exceed 600 feet in length. This limitation is intended to ensure that these roads remain low-traffic residential streets, and that emergency and service vehicles can adequately access and serve the entire length. However, the road in question is approximately 963.41 feet long, significantly exceeding the prescribed maximum length. This non-compliance with the established standard may compromise the intended functionality and safety of the residential area.

## II. JURISDICTION AND VENUE

1.      **Jurisdiction**: This Court has jurisdiction over this action pursuant to *28 U.S.C. § 1331*, which confers original jurisdiction on federal district courts over all civil actions arising under the Constitution, laws, or treaties of the United States. The Plaintiff's claims arise under federal statutes, including the *Americans with Disabilities Act (ADA) (42 U.S.C. § 12131 et seq)*, *Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d et seq.)*, *Equal Protection Clause (14th Amendment)*, and the relevant regulations promulgated under these statutes, which provide the legal basis for the claims in this action. Jurisdiction is further supported by *28 U.S.C. § 1343(a)(3)*, which grants original jurisdiction to federal courts in civil actions to redress the deprivation, under color of any State law, of any right, privilege, or immunity secured by the Constitution of the United States or by any Act

1  of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States. The

2  Plaintiff alleges violations of his rights under these federal statutes, which secure his rights to non-discriminatory

3  and accessible public infrastructure.

4        **2.**      **Venue:** Venue is proper in this District pursuant to *28 U.S.C. § 1391(b)*, as the Defendant, City of

5  San Diego, is a municipal corporation located within this judicial district. The events or omissions giving rise to the

6  Plaintiff's claims occurred within this District, specifically on 711 51st Street, San Diego, California. This location is

7  within the jurisdictional boundaries of the Southern District of California, making this the appropriate venue for this

8  action. Furthermore, the Southern District of California is the proper venue under *28 U.S.C. § 1391(b)(2)*, as a

9  substantial part of the events or omissions giving rise to the claims occurred in this District. The Plaintiff resides in

10  this District, and the adverse effects of the City of San Diego's failure to maintain safe, accessible, and non-

11  discriminatory infrastructure are experienced by the Plaintiff within this District. The appropriateness of venue in

12  this District is supported by the decision in *Leroy v. Great W. United Corp, 443 U.S. 173, 99 S. Ct. 2710 (1979)*, the

13  Supreme Court emphasized that significant weight is given to the plaintiff's choice of venue, particularly when the

14  chosen venue is intimately connected with the underlying events of the lawsuit.

15        **3.**      Based on the statutes and case law, this Court has proper jurisdiction over the Plaintiff's claims,

16  and venue is correctly laid in the Southern District of California. The Plaintiff respectfully requests that this Court

17  adjudicate the claims herein to ensure compliance with federal laws governing accessibility and non-discrimination.

18                    **III. PARTIES**

19        **1.**      **Plaintiff:** Plaintiff, Daniel Ndizeye, is an individual residing at 711 51st Street, San Diego,

20  California, within the jurisdiction of the Southern District of California. Mr. Ndizeye is a citizen of the United States

21  and a resident of the City of San Diego. The deteriorated condition of the roadways and sidewalks on 711 51st Street

22  has directly impacted Mr. Ndizeye's ability to safely navigate his neighborhood. Due to the City's neglect in

23  maintaining these public infrastructures, Mr. Ndizeye has suffered significant physical harm, including injuries from

24  tripping on hazardous sidewalks and collisions with improperly placed utility poles.

25        **2.**      The City's ongoing failure to maintain accessible public infrastructure is currently creating

26  dangerous conditions that directly affect Plaintiff, Mr. Ndizeye. The City's neglect has compromised safety and

27  accessibility, making it difficult and hazardous for Mr. Ndizeye to navigate public spaces. This lack of maintenance,

28

COMPLAINT FOR NEGLIGENCE IN MAINTAINING PUBLIC INFRASTRUCTURE AND PROLONGED
DANGEROUS CONDITIONS - 6

including improperly designed sidewalks and obstructed pathways, violates the Americans with Disabilities Act

(ADA), which mandates that public entities provide accessible services, programs, and facilities to ensure equal

access for all individuals. The Ninth Circuit's decision in *Barden v. City of Sacramento*, 292 F.3d 1073 (9th Cir.

2002), emphasized that the ADA's requirements for accessible public infrastructure extend beyond individuals with

disabilities, ensuring the safety and usability of public spaces for the entire community, including Mr. Ndizeye. The

City's disregard for these legal obligations has had a direct and detrimental impact on Mr. Ndizeye's ability to safely

access and use the public infrastructure in his neighborhood.

3.    **Defendant:** Defendant, City of San Diego, is a municipal corporation duly organized and existing

under the laws of the State of California, with its principal offices located at 202 C Street, San Diego, California.

The City of San Diego is responsible for the maintenance, management, and operation of public roads, sidewalks,

and related infrastructure within its jurisdiction, including those on 711 51st Street, as stated by *Cal Public

Resources Code § 26650 (Refer Cplt P. 3, line 7-9)*. As a recipient of federal financial assistance, the City is

obligated to comply with the mandates of the ADA, *Title VI of the Civil Rights Act of 1964*, *Section 504 of the

Rehabilitation Act of 1973*, and the Federal Highway Administration (FHWA) Guidelines, including compliance

with the Manual on Uniform Traffic Control Devices (MUTCD) and other relevant standards. The City's failure to

maintain the infrastructure in Plaintiff's neighborhood in a manner that ensures safety and accessibility for all

residents, including those with disabilities, constitutes a violation of these federal mandates. This failure has resulted

in direct physical harm to Mr. Ndizeye, further underscoring the City's neglect and the need for judicial intervention.

## IV. FACTUAL BACKGROUND

### A detailed "Supplemental Statement of Background Facts" is attached.

1.    **Potholes and Fissures**: The road in front of Plaintiff's residence is riddled with potholes and

fissures (see *Exhibit 1A, Img 32A*). These defects have made driving hazardous (Refer Supp. Stmt of BF. for Neg. in

Infra *P. 2-3, l 24-27* and *9-13*), leading to instability and difficulty in maneuvering his vehicle (*Exhibit 1A, Img 3A*).

On multiple occasions, Plaintiff's vehicle has suffered damage due to these dangerous conditions, forcing him to

bear the costs of repairs. The City's disregard for the maintenance of this road (see *Ex 1G, Doc 4G*) has not only

inconvenienced Plaintiff (see *Exhibit 1H, Img 19H*) but has also put his safety at risk every time he drives in or out

1   of his property (*Exhibit 1F, Img 1F-5F*). This persistent issue underscores the City's failure to meet its duty of care

2   (In Viol. of *Civil Rights Act of 1964* Refer Cplt *P. 2, ¶ C*) in maintaining safe public infrastructure.

3        **2.**    **Width and Parking:** Plaintiff routinely faces significant challenges in navigating the road, when

4   vehicles are parked along the curb (*Exhibit 1H, Img 9H*). The insufficient space for vehicles to pass safely has led to

5   collisions (see *Ex 1H, Img 19H*), causing Plaintiff significant and ongoing stress, resulting in frequent delays and

6   anxiety during daily commutes. The unsafe and inefficient flow of traffic (Refer Supp. Stmt of BF. for Neg. in Infra

7   *P. 2-3, l 27-6*) has directly interfered with Plaintiff's academic life (In Viol. of *Cal Fire Code § 503.2.1* mandates

8   20ft width, road is 14.2ft), forcing Plaintiff to withdraw from more than four courses at SDSU due to the persistent

9   difficulties faced while commuting (see *Exhibit 1H, Img 1H-2H*). The City's negligence (Refer Cplt *P. 11, ¶ 13*) has

10  resulted in significant financial harm to Plaintiff, with a loss totaling approximately $8,000. Plaintiff's vehicle has

11  been consistently scratched and dirtied (see *Ex. 1H, Img. 24H-32H*) due to the poor road conditions (*Ex. 1A, Img.*

12  *16A-30A*). This damage necessitates frequent and costly cleaning, which has substantially increased Plaintiff's utility

13  bills. The City's disregard for its responsibilities (In Viol. of *FHWA 23 CFR § 655.603* to comply with Federal

14  Standards; Refer Cplt *P. 2, ¶ D* and Supp. Stmt of BF. for Neg. in Infra *P. 5, line 16-27*) has placed an unjust burden

15  on Plaintiff, further exacerbating the physical, emotional, and economic hardships suffered.

16       **3.**    **Road Design and Speeding:** The inadequate design and lack of proper signage on the 711 block

17  of 51st Street have directly contributed to unsafe road conditions (*Ex 1A, Img 14A-30A*), including excessive

18  speeding (see *Ex. 1H, Img. 9H*). The City has failed to install essential traffic-calming measures (Refer Supp. Stmt

19  of BF. for Neg. in Infra *P. 3, ¶ 5, l 19-24*), such as speed bumps and clearly visible signage (In Breach. of *23 CFR §*

20  *655.603* to comply with Manual on uniform traffic control Devices), which are necessary to regulate traffic flow and

21  enforce speed limits in accordance with relevant legal standards (Refer Supp. Stmt of BF. for Neg. in Infra *P. 4, l 5-*

22  *14*). As a result, Plaintiff has been placed in a constant state of anxiety (Refer Cplt *P. 9, ¶ 8*) and fear for personal

23  safety due to the City's disregard for proper road safety protocols (Refer Supp. Stmt of BF. for Neg. in Infra *P. 4, ¶*

24  *C*). The City's inaction in addressing these hazardous conditions (see *Exhibit 1G, Doc 18G*) has not only disrupted

25  the safe use of the road (see *Exhibit 1H, Img 22H*) but has also exposed Plaintiff to vehicular collisions and several

26  injuries, further compounding emotional (see *Ex 1G, Doc 9G* Plaintiff emailed the City with no response. Upon

27

28

1  visiting, the City stated, "*PLAINTIFF'S TAX CONTRIBUTIONS WERE INSUFFICIENT FOR RELIEF*") and

2  physical distress.

3      **4.     Sidewalk Disrepair:** The sidewalks on 711 51st Street are in a severe state of disrepair,

4  characterized by obstructions such as utility poles (*Exhibit 1C, Img 2C, 11C*), overgrown vegetation (*Exhibit 1C,*

5  *Img 9C-10C*), and uneven surfaces (*Exhibit 1C, Img 1C, 8C*). These conditions have caused the Plaintiff to trip and

6  suffer injuries on multiple occasions. The City's failure to maintain these sidewalks in a safe condition violates a

7  breach of its duty to provide safe pedestrian pathways.

8      **5.     Curb Safety Violations:** The City has neglected to maintain the curbs on 711 51st Street for 59

9  years (see *Exhibit 2A, Doc 2A-4* since 6/1/1967, per official City records), creating a persistent safety hazard

10  (*Exhibit 2B, Img 2B-7, 2B-11*). The City's failure to paint the curb red (*Ex 1B, Img 3B*) to prevent vehicles from

11  parking downhill (see *Exhibit 1B, Img 1B-2B*) has obstructed Plaintiff's view (*Exhibit 2B, Img 2B-7*) when

12  attempting to drive out of the road. This obstruction causes Plaintiff significant anxiety each time he drives, as it

13  becomes difficult for vehicles to see each other approaching. Plaintiff has been involved in multiple accidents on

14  separate occasions, resulting in injuries to Plaintiff's knee. The City's long-standing neglect (see *Exhibit 1G, Doc*

15  *1G-3G* no response from the city) in adhering to curb maintenance standards (In Breach. of *23 CFR § 655.603*

16  which mandates to adhere to uniform traffic requirements) has resulted in unsafe conditions that continue to have

17  tangible negative effects on the Plaintiff's property and personal safety.

18      **6.     Waste Accumulation:** The narrow entrance to Plaintiff's Street (see *Exhibit 2B, Img 2B-1*),

19  exacerbated by parked vehicles (*Exhibit 1H, Img 9H*), has made it difficult for service vehicles to access the area,

20  leading to prolonged periods of waste accumulation (see *Exhibit 1E, Img 1E-4E*). This accumulation has resulted in

21  poor air quality (In Viol. of *EJ Executive Order 12898* exposing Plaintiff to unsanitary conditions,

22  disproportionately harming his living environment, Refer Cplt *P. 2-3, ¶ E*), forcing Plaintiff to live in unsanitary

23  conditions. The City's failure to modify the street (Refer Supp. Stmt of BF. for Neg. in Infra *P. 2-3, ¶ 1-5* Road

24  Safety and condition) to ensure regular waste collection has directly impacted Plaintiff's living environment,

25  contributing to his ongoing distress.

26      **7.     Emergency Response Access:** The compromised road width, effectively reduced to 14.2ft (see *Ex*

27  *2B, Img 2B-1*) due to parked vehicles (*Ex 1H, Img 9H*) and bidirectional traffic (see *Exhibit 1H, Img 1H-2H, 9H*),

28

1  fails to meet the minimum standard required for emergency vehicle access (In Viol. of *Cal Fire Code § 503.2.1*

2  mandate a minimum width of 20ft and road is 14.2ft). This deficiency has had dire consequences for the Plaintiff,

3  who is unable to receive timely ambulance and emergency response services (see *Exhibit 1F, Img 1F-5F*). On

4  multiple occasions, emergency vehicles, including ambulances and fire trucks, have been unable to enter the road

5  due to its narrowness (see *Exhibit 2B, Img 2B-1*), causing significant delays in response times. Plaintiff lives in

6  constant fear of being unable to access critical emergency services when needed, further exacerbating the risk to his

7  safety and well-being. The City's failure to ensure proper access for emergency vehicles (Refer Supp. Stmt of BF.

8  for Neg. in Infra *P. 5, l 16-27*) not only violates safety regulations (In Breach. of *23 CFR § 655.603* to adhere to

9  road width to accommodate bidirectional traffic and parking) but also puts Plaintiff and his property at substantial

10  risk.

11      **8.    Emotional Distress:** The ongoing dangerous conditions on 711 51st Street have caused Plaintiff

12  considerable emotional distress. The City's persistent neglect, despite repeated complaints (see *Exhibit 1G, Doc 1G-*

13  *4G, 9G, 18G*), has led to Plaintiff living in a constant state of anxiety and worry for his safety and that of his

14  property. The emotional toll of these unresolved issues (see *Exhibit 1A, Img 16A-30A*) has severely diminished

15  Plaintiff's quality of life, as he contends with the daily stress of navigating unsafe conditions (see *Exhibit 1H, Img*

16  *1H-22H*).

17      **9.    Physical Harm:** As a direct result of the City's neglect (*Exhibit 1A, Img 16A-30A*), Plaintiff has

18  suffered physical harm, including injuries from tripping on hazardous sidewalks and collisions with improperly

19  placed utility poles (see *Exhibit 1C, Img 2C and 11C*). These incidents highlight the City's failure to maintain safe

20  public infrastructure (*Exhibit 1A, Img 32A*), directly causing harm to Plaintiff and violating the City's duty of care

21  (In Viol. of *23 CFR § 655.603* Refer Cplt *P. 2, l 20-24*).

22      **10.   Discrimination:** The City's ongoing neglect of the infrastructure on 711 51st Street (see *Exhibit*

23  *1A, Img 16A-30A*), a predominantly minority and low-income neighborhood (see *Exhibit 1I, Doc 1I-3I* a petition

24  signed by residents, collectively expressing their desire for improvement of the road; (*the City has failed to respond*

25  *to the petition*) has resulted in the inequitable distribution of resources (see *Exhibit 1D, Img 1D-7D* the road is

26  resurfaced annually, violating *23 CFR § 655.603*, which mandates resurfacing every 10 to 15 years). As a low-

27  income U.S. citizen, the Plaintiff has been particularly and disproportionately affected by this neglect "*I have*

28

1   *suffered immense prejudice due to the City's negligence, causing injury, financial loss, anxiety, and poor air*

2   *quality*" (Refer Decl. Supp. Cplt. Neg. in Pub. Infra, *P. 2, l 6-13*), which highlights the broader systemic inequities

3   faced by vulnerable communities (In Viol. of *Civil Rights Act of 1964* under *42 U.S.C § 2000d* Refer Cplt *P. 2, l 16-*

4   *19*). The City's persistent failure to adhere to required accessibility standards (In Breach. FHWA under *23 CFR §*

5   *655.603* and *23 CFR Part 625* Refer Cplt *P. 2, l 20-24*) further compounds these disparities, leading to a deprivation

6   of essential public safety and maintenance services in the Plaintiff's neighborhood (see *Exhibit 1F, Img 1F-4F*; I

7   was unable to receive emergency help). This pattern of neglect has caused continuous and disproportionate harm to

8   the Plaintiff (In Viol. of *Rehabilitation Act of 1973 § 504* Refer Cplt *P. 2, l 12-15*), reinforcing the perception of

9   unequal treatment and discrimination based on socioeconomic status.

10       **11.    Property Damage:** The City's prolonged failure to maintain the road and sidewalks has resulted

11   in significant property damage to Plaintiff's vehicle (see *Exhibit 1H, Img 24H-25H*) and has contributed to the

12   depreciation of his property value. Plaintiff has had to incur costs for vehicle repairs due to the damaged road, and

13   the overall neglect has diminished the value of his home, impacting his financial well-being.

14       **12.    Personal Expenses for Road Maintenance:** Due to the City's continued failure to adequately

15   repair the road, Plaintiff has been forced to personally bear the cost of filling potholes (see *Exhibit 1A, Image 12A*

16   precisely between *line 15-17*) to prevent further damage to their vehicles for 8 years. This responsibility, which

17   should properly fall to the City in accordance with *California Public Resources Code § 26650* (Refer *Cplt P. 3, line*

18   *7-9*; The City is responsible for maintaining its property, and failure to distribute resources equitably (see *Exhibit*

19   *1D, Image 1D-7D*, receives the annually maintenance. In Viol. of *23 CFR § 655.603* mandates every 10 to 15 years)

20   without a valid reason constitutes a violation of the *Civil Rights Act of 1964* under *42 U.S.C. § 2000d*), has unjustly

21   shifted the financial burden to Plaintiff, despite the taxes paid for such municipal services. This failure has resulted

22   in significant out-of-pocket expenses for Plaintiff.

23       **13.    Negligence:** The City's blatant disregard for the hazardous conditions on 711 51st Street (see

24   *Exhibit 1A, Image 16A-30A*), despite multiple communications (see *Exhibit 1G, Doc 1G-3G* and *9G, 18G*) from

25   Plaintiff, stands as clear evidence of its negligence (see *Exhibit 1I, Doc 1I-3I* petition sent to city for road

26   maintenance; city response, *"WE DON'T PAY ENOUGH TAXES TO SEEK RELIEF"*). The City's failure to act on

27   these concerns demonstrates a disregard for Plaintiff's safety and well-being (In Viol. *Civil Rights Act of 1964* under

28
COMPLAINT FOR NEGLIGENCE IN MAINTAINING PUBLIC INFRASTRUCTURE AND PROLONGED
DANGEROUS CONDITIONS - 11

1  *42 U.S.C. § 2000d Refer Cplt P. 2, l 16-19*), necessitating legal intervention to compel the City to fulfill its

2  obligations.

3  **V. LEGAL BASIS FOR CLAIMS**

4  **A.    Count 1: Violation of the Equal Protection Clause (14th Amendment)**

5      1.      Plaintiff alleges the City of San Diego has violated his rights under the Equal Protection Clause of

6  the 14th Amendment to the United States Constitution (Refer Cplt *P. 2, l 16-19* and Supp. Stmt of BF. for Neg. in

7  Infra *P. 5, l 16-27*; This has resulted in emergency vehicles being unable to access the road (see *Exhibit 1F, Img 1F-*

8  *5F*). The Equal Protection Clause requires that no state shall "deny to any person within its jurisdiction the equal

9  protection of the laws (Refer Cplt *P. 2-5, line 8-18*; The roadblocks emergency access (*Exhibit 1F, Img 2F*) and the

10  blunt disregard equal resource distribution; (Refer Supp. Stmt of BF. for Neg. in Infra *P. 3, ¶ 5*)."

11      2.      The City of San Diego, by failing to maintain the roadways and sidewalks (see *Exhibit 1A, Img*

12  *16A-30A*) in the Plaintiff's neighborhood while adequately maintaining similar infrastructure (see *Exhibit 1D, Img*

13  *1D-7D*, receives the annually maintenance. In Viol. of *23 CFR § 655.603* mandates every 10 to 15 years) has

14  engaged in discriminatory practices that disproportionately affect residents of 711 51st Street, including Plaintiff

15  (Refer Cplt, *P. 9-10, ¶ 10*). This disparate treatment constitutes a violation of the Plaintiff's right to equal protection

16  under the law, as established in *Village of Willowbrook v. Olech,* 528 U.S. 562 (2000), which holds that intentional

17  (see *Exhibit 1G, Doc 1G-4G* Plaintiff attempted to resolve the issue without litigation, but the City ignored his

18  efforts (see *Exhibit 1I, Doc 1I-3I*; Petitioned for road repairs), differential treatment of individuals from others

19  similarly situated, without rational basis, violates the Equal Protection Clause.

20  **B.    Count 2: Violation of Title VI of the Civil Rights Act of 1964**

21      3.      Under *42 U.S.C. § 2000d*, Title VI of the Civil Rights Act of 1964 prohibits discrimination on the

22  basis of race, color, or national origin in programs and activities receiving federal financial assistance (see *Exhibit*

23  *1A, Img 16A-30A* roadway has remained without maintenance since 1967 (see *Exhibit 2A, Doc 2A-4*). Plaintiff

24  alleges that the City of San Diego, as a recipient of federal funds (In Viol. of *23 CFR § 655.603* comply with the

25  Manual on Uniform Traffic Control Devices (see *Exhibit 1H, Img 9H* and *19H* which *Cal Fire Code § 503.2.1*

26  mandates a minimum width of 20ft; road is 14.2ft (*Exhibit 1H, Img 6H* Refer *P. 2, l 20-24*), has engaged in

27  discriminatory practices by failing to maintain the infrastructure in Plaintiff's predominantly minority neighborhood.

28  COMPLAINT FOR NEGLIGENCE IN MAINTAINING PUBLIC INFRASTRUCTURE AND PROLONGED
DANGEROUS CONDITIONS - 12

1   **4.**      This neglect has directly impacted Plaintiff (Refer Decl. Supp. Cplt. Neg. in Pub. Infra, *P. 2, l 6-*

2   *13*), who resides in an area that has been disproportionately affected by the City's failure to provide basic services

3   and maintenance. The City's actions have caused Plaintiff ongoing harm, including physical injury from tripping on

4   poorly maintained sidewalks (see *Exhibit 1C, Img 11C*; Pursuant to *28 CFR § 35.151* utility pole placed in the

5   middle, failing to meet the 3ft clearance (see *Exhibit 1C, Img 2C*) and the financial burden of vehicle repairs (see

6   *Exhibit 1H, 24H-32H* frequent vehicle cleaning has led to unsustainably high water bills) due to road disrepair

7   (*Exhibit 1A, Img 26A*; In Viol. of *EJ (EO 12898*) resulting in hazardous roads, waste accumulation (see *Exhibit 1E,*

8   *Img 1E-4E* and *11E-14E*), and poor air quality. The Supreme Court in *Alexander v. Sandoval,* 532 U.S. 275 (2001),

9   supports that Title VI encompasses not only intentional discrimination but also practices that result in disparate

10  impacts, which is precisely the case here (see *Exhibit 1A, Img 16A-30A*).

11  **C.      Count 3: Violation of the Americans with Disabilities Act (ADA) - Title II**

12  **5.**      Under *28 CFR § 35.151*, Title II of the Americans with Disabilities Act (ADA) requires public

13  entities to maintain accessible public infrastructure for all residents (see *Exhibit 1C, Img 9C-13C*), including those

14  with disabilities. The City's failure to adhere to ADA standards (Refer Supp. Stmt of BF. for Neg. in Infra *P. 6, l 2-*

15  *11*) has created an environment that poses significant safety risks to all individuals, regardless of disability status.

16  The hazardous placement of utility poles in the middle of sidewalks (see *Exhibit 1C, Img 2C*) obstructs pedestrian

17  pathways, making it challenging for anyone to navigate safely. Plaintiff has personally experienced these dangers,

18  having collided with a utility pole, resulting in a serious injury to his left shoulder (Refer Cplt *P. 8, l 16-20.*

19  Plaintiff's shoulder injury has caused pain, academic setbacks, missed classes, and emotional distress. (In Viol. of *§*

20  *504 of the Rehabilitation Act of 1973*, mandates equal access and prohibits actions that cause undue harm to

21  individuals (*Exhibit 1C, Img 2C*).

22  **6.**      The uneven and narrow sidewalks, combined with obstructed pathways (see *Exhibit 1C, Img 9C*),

23  force Plaintiff to take longer, more dangerous routes (Refer Cplt *P. 8, l 3-9*). The City's neglect has resulted in not

24  only physical harm but also emotional distress, as Plaintiff lives in constant fear of being injured due to these unsafe

25  conditions. In *Barden v. City of Sacramento,* 292 F.3d 1073 (9th Cir. 2002), establishes that public sidewalks must

26  be accessible under the ADA (In Breach. of *28 CFR § 35.151* due to the fact the utility pole being placed in the

27  middle), underscoring the City's duty to maintain safe infrastructure. The City's ongoing failure to comply with

28

COMPLAINT FOR NEGLIGENCE IN MAINTAINING PUBLIC INFRASTRUCTURE AND PROLONGED
DANGEROUS CONDITIONS - 13

these standards (In Viol. of *California Building Code § 11B-403.5* mandates a minimum walking surfaces 3ft

minimum (see *Exhibit 1C, Img 11C* utility pole improper placement in the middle) directly impacts Plaintiff's ability

to safely and effectively use public spaces in his neighborhood, highlighting a pervasive issue of negligence that

affects all community members (see *Exhibit 1I, Doc 1I-3I*; Petitioned for sidewalk repairs, left unaddressed for

years).

**D.     Count 4: Failure to Comply with Federal Highway Administration (FHWA) Guidelines and MUTCD**

**Standards**

　　　7.     Plaintiff contends that the City of San Diego has failed to comply with the Federal Highway

Administration (FHWA) Guidelines and the Manual on Uniform Traffic Control Devices (MUTCD), as required by

*23 CFR § 655.603* (see *Exhibit 1A, 16A-17A* In Viol. of *Environmental Justice (Executive Order 12898)*; Vehicles

on the road stir up dust, forcing Plaintiff to inhale harmful particles) and *23 CFR Part 625* (see *Exhibit 1H, Img 19H*

Access roads must be all-weather, hard-surfaced, and at least 20 feet wide (see *Exhibit 1A, Img 26A*). The City is

obligated to maintain roadways and pedestrian facilities in accordance with these federal standards, which include

ensuring safe road conditions (see *Exhibit 1A, 32A*), proper signage (Refer Supp. Stmt of BF. for Neg. in Infra *P. 5, 1*

*5-14*), (see *Exhibit 1H, Img 1H*; Refer Supp. Stmt of BF. for Neg. in Infra *P. 3, ¶ 4*) and adequate lighting (see

*Exhibit 2B, Img 2B-8* and *2B-9*); Refer Supp. Stmt of BF. for Neg. in Infra *P. 4-5, 1 21-3*).

　　　8.     The City's neglect has resulted in a hazardous environment on 711 51st Street, where Plaintiff has

experienced multiple incidents of vehicle damage (see *Exhibit 1H, Img 24H-27H* and *Img 29H-32H. In Viol. of 23*

*CFR Part 625* mandates minimum width 20ft; the road is 14.2, causing vehicles to be dangerously close (see *Exhibit*

*1H, Img 22H*) and personal injury due to inadequate maintenance. This non-compliance with federal guidelines has

directly harmed Plaintiff (Refer Decl. Supp. Cplt. Neg. in Pub. Infra, *P. 2, 1 6-13*), by creating unsafe conditions that

violate the standards designed to protect all users of public roads (In Viol. of *Section 504 of the Rehabilitation Act of*

*1973*; Plaintiff's routine has become battle, causing his vehicle to swerve uncontrollably (see *Exhibit Img 32A*),

resulting on missed commitments, and feeling trapped in an environment that has robbed him of security and peace

of mind. As established in *Barden v. City of Sacramento,* 292 F.3d 1073 (9th Cir. 2002) entities receiving federal

funds must adhere to federal safety standards, and the City's failure to do so has caused significant harm to Plaintiff.

## VI. PRAYER FOR RELIEF

1.    **WHEREFORE**, Plaintiff, Daniel Ndizeye, respectfully requests that this Court grant the following relief:

    A.  **Declaratory Relief**: A declaration that the City of San Diego has violated Plaintiff's rights under the Equal Protection Clause of the Fourteenth Amendment, Title VI of the Civil Rights Act of 1964, Title II of the Americans with Disabilities Act (ADA), and relevant Federal Highway Administration (FHWA) Guidelines and MUTCD Standards.

    B.  **Injunctive Relief**: An order compelling the City of San Diego to take immediate corrective action to:

        1)  Repair and maintain the roadways and sidewalks on 711 51st Street to ensure they are safe and accessible, in compliance with ADA standards and FHWA guidelines.

        2)  Implement traffic calming measures and improve signage to enhance pedestrian and vehicular safety in the area.

    C.  **Compensatory Damages**: An award of compensatory damages to Plaintiff for physical injuries, emotional distress, and financial losses incurred as a result of the City's negligence and discriminatory practices.

    D.  **Such Other Relief**: Such other and further relief as this Court deems just and proper.

## VII. DEMAND FOR JURY TRIAL

1.    Pursuant *Federal Rules of Civil Procedure Rule 38*, Plaintiff Daniel Ndizeye hereby demands a trial by jury on all issues so triable within this action. Plaintiff asserts this right to a jury trial based on the constitutional guarantee of a jury trial in civil actions where legal rights are to be determined. This demand is made in consideration of the nature of the claims presented and the relief sought, which includes compensatory and punitive damages arising from violations of Plaintiff's civil rights under **(1)** *Equal Protection Clause (14th Amendment),* **(2)** *Title II of the Americans with Disabilities Act (ADA),* **(3)** *Title VI of the Civil Rights Act of 1964,* **(4)** *Rehabilitation Act of 1973 § 504*, and **(5)** relevant Federal Highway Administration (FHWA) Guidelines and Standards.

COMPLAINT FOR NEGLIGENCE IN MAINTAINING PUBLIC INFRASTRUCTURE AND PROLONGED DANGEROUS CONDITIONS - 15

2.      **Legal Justification:** The Seventh Amendment to the United States Constitution provides, "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved..." The Supreme Court has interpreted this provision to apply to actions for damages and other legal remedies (as opposed to purely equitable claims) in federal civil cases. As established in *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500 (1959), when legal claims are joined with equitable ones, the right to a jury trial on the legal claims, including claims for damages, must generally be preserved.

3.      Given the nature of the Plaintiff's claims involving the assessment of damages and the evaluation of alleged constitutional violations, a jury trial is not only appropriate but also essential to ensure that these determinations are made impartially and in accordance with the democratic principles underlying the Seventh Amendment.

4.      "I, Daniel Ndizeye, Plaintiff in the above-captioned case, declare under penalty of perjury under the laws of the State of California, pursuant to *California Code of Civil Procedure § 2015.5*, and under the laws of the United States, pursuant to *18 U.S.C. § 1621*, that the foregoing is true and correct."

**Dated:** July 12, 2024.
**Name:** Daniel Ndizeye
**Phone Number:** (619) 394-2453
**Email:** danielndizeye100@gmail.com
**Address:** 711 51st St, San Diego, CA 92114-1001, USA

**By:** _____
**Pro Se, Plaintiff:** Daniel Ndizeye

**Daniel Ndizeye v. City of San Diego**

COMPLAINT FOR NEGLIGENCE IN MAINTAINING PUBLIC INFRASTRUCTURE AND PROLONGED DANGEROUS CONDITIONS - 16